

August 12, 2026

Mr. W. Boyd Bush, Jr., Ed.D.
Executive Director
Texas Board of Chiropractic Examiners
1801 North Congress, Suite 10.500
Austin, Texas 78701

**Opinion No. KP-0523**

Re: Authority of the Texas Board of Chiropractic Examiners to adopt a rule permitting licensed chiropractors with the requisite training established by the Board to perform certain procedures (RQ-0630-KP)

Dear Mr. Bush:

Because the Legislature has expressly excluded "incisive . . . procedures" from the scope of chiropractic practice, TEX. OCC. CODE § 201.002(c)(1), you inquire whether the Board of Chiropractic Examiners possesses authority to adopt a rule allowing a licensed chiropractor to employ a "nonincisive needle" to perform an electromyography ("EMG") procedure.[1] You explain that the proposed nonincisive needle would be comparable in size and character to an acupuncture needle, which you note that the Legislature has classified as nonincisive. Request Letter at 3−4; *see* TEX. OCC. CODE § 205.001(2)(a). Relying on this statutory distinction, you suggest that an EMG procedure conducted with nonincisive needles would constitute "nonincisive procedures," and therefore remain within the permissible scope of chiropractic practice. Request Letter at 4−6. We agree.

**The Board regulates the practice of chiropractic in Texas.**

In 1949, the Legislature enacted a law governing "chiropractors minimum educational standards and regulation practice"—commonly referred to as the Chiropractic Act—and created the Texas Board of Chiropractic Examiners.[2] Chiropractic practice historically rested on the belief that a wide range of health problems stem from "spinal misalignment," or "subluxations," which could be corrected through manipulation of the vertebrae. *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 375 S.W.3d 464, 467 (Tex. App.—Austin 2012, pet. denied) [hereinafter *TMA I*]. The

---

[1] Letter from Mr. W. Boyd Bush, Jr., Ed.D., Exec. Dir., Tex. Bd. of Chiropractic Exam'rs, to Hon. Ken Paxton, Tex. Att'y Gen. at 1 (Feb. 5, 2026), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2026/RQ0630KP.pdf ("Request Letter").

[2] Act of Apr. 21, 1949, 51st Leg., R.S., ch. 94, § 1, 1949 Tex. Gen. Laws 160, 160−70.

current statutory framework regulating chiropractic practice, codified in Chapter 201 of the Occupations Code, *see* TEX. OCC. CODE §§ 201.001−.606, reflects this traditional conception in the permitted scope of chiropractic practice, *see id.* § 201.002(b)–(c). The Legislature charged the Board[3] with regulating this practice by "administer[ing] the purposes of and enforc[ing]" the Act. *Id.* § 201.151. To that end, the Act includes, *inter alia*, license requirements, *id.* §§ 201.301−.314, registration and license renewal requirements, *id.* §§ 201.351−.356, certain practice requirements for a license holder, *id.* §§ 201.451−.453, disciplinary procedures for alleged violations of the Act, *id.* §§ 201.501−.511, as well as penalty and enforcement provisions, *id.* §§ 201.551−.606.

**The Board has authority to adopt a rule that clarifies activities within the practice of chiropractic and requires specialized training.**

The Board is a state administrative agency and, thus, "has only those powers that the Legislature expressly confers upon it and those implied powers that are reasonably necessary to carry out its express functions or duties." *Tex. Ass'n of Acupuncture & Oriental Med. v. Tex. Bd. of Chiropractic Exam'rs*, 524 S.W.3d 734, 738–39 (Tex. App.—Austin 2017, no pet.) (involving related litigation concerning the Board). Put simply, "[a]bsent specific or implied statutory authority," a Board rule is "invalid." *Id.* at 739. Agency rules must not only be authorized by their statutory authority but also consistent. *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 569 (Tex. 2021) [hereinafter *TMA II*]. Consequently, a rule adopted by the Board cannot "contravene[] the Act's specific text or run[] counter to its purpose as a matter of law."[4] *Id.* at 571.

The Legislature granted the Board wide-ranging rulemaking authority. *See, e.g.*, TEX. OCC. CODE §§ 201.152(a) (providing authority to adopt rules "necessary to[] . . . perform the [B]oard's duties" and "regulate the practice of chiropractic"), 201.152(b) (providing authority to "adopt rules for the enforcement of" the Act), 201.205(a) (providing authority to "adopt rules concerning the investigation of a complaint filed with the [B]oard"), 201.1555(b) (providing authority to "adopt rules to prevent fraud in the practice of chiropractic"). Relevant here, the Board must "adopt rules clarifying what activities are included within the scope of the practice of chiropractic and what activities are outside of that scope." *Id.* § 201.1525. And those rules "must clearly specify the procedures that chiropractors may perform" and "any equipment and the use of that equipment that is prohibited." *Id.* § 201.1525(1)–(2). They may also "require a license holder to obtain additional training or certification to perform certain procedures or use certain equipment." *Id.* § 201.1525(3). In sum, the Board's authority turns on the scope of chiropractic practice, the boundaries of which the Legislature has expressly defined.

A "person practices chiropractic" if the person "uses objective or subjective means to diagnose, analyze, examine, or evaluate the biomechanical condition of the spine and musculoskeletal system of the human body." *Id.* § 201.002(b)(1); *see also* 22 TEX. ADMIN. CODE § 78.1 (describing the scope of chiropractic practice). The same is true if the person "performs

---

[3] The Board "consists of nine members appointed by the governor with the advice and consent of the senate." TEX. OCC. CODE § 201.051(a). *See generally id.* §§ 201.051−.061 (detailing the Board's membership and eligibility requirements).

[4] In addition, a rule cannot impose other burdens, conditions, or restrictions that exceed the pertinent statutory provisions or are inconsistent therewith. *TMA II*, 616 S.W.3d 558 at 569. Because no rule is before us, we do not address this limitation.

nonsurgical, nonincisive procedures, including adjustment and manipulation, to improve the subluxation complex or the biomechanics of the musculoskeletal system."[5] TEX. OCC. CODE § 201.002(b)(2). But a licensed chiropractor may not use "incisive or surgical procedures," *id.* § 201.002(c)(1), which "includes making an incision into any tissue, cavity, or organ by any person or implement," *id.* § 201.002(a)(3); *see also* 22 TEX. ADMIN. CODE § 78.1(a)(4) (defining "[i]ncision" as "[a] cut or a surgical wound; also, a division of the soft parts made with a knife or hot laser").[6]

You do not provide us with proposed rule text to consider, so we cannot opine on the validity of a specific rule. *See generally* Request Letter at 1−6. You explain however that the hypothetical rule would "permit a licensed chiropractor with the requisite training established by the Board to use a nonincisive needle . . . to perform an" EMG procedure. *Id.* at 1. Based on this description, we presume the rule would clarify that a needle EMG procedure is within the scope of the practice of chiropractic, and it would identify required training and equipment for the procedure. The Board has authority to adopt such a rule if a needle EMG procedure does not contravene the "practice of chiropractic" as statutorily prescribed. *See* TEX. OCC. CODE § 201.1525; *see also id.* § 201.002(b).

### The practice of chiropractic encompasses the use of a nonincisive needle by a licensed chiropractor to perform a needle EMG procedure.

Having determined that the Board has applicable rulemaking authority, the crux of your question depends on whether a needle EMG procedure is consistent with the scope of chiropractic. *See supra* pp. 2−3. Our understanding is that a needle EMG procedure "records the electrical activity of th[e] muscle." Request Letter at 4. As one court describes, the procedure "entails the insertion of needle electrodes into a patient's muscle and transmitting a small electric current as a means of evaluating nerve conductivity." *TMA I*, 375 S.W.3d at 469; *see also Tex. Mut. Ins. Co. v. Stelzer*, No. 03–06–00675–CV, 2010 WL 142501, at *1 n.2 (Tex. App.—Austin Jan. 13, 2010, no pet.) (mem. op.) (defining "[n]eedle EMG" as "a diagnostic procedure used to verify healthy nerve function"). It can help determine "if there are any problems," Request Letter at 4, such as whether muscle weakness and shrinking are caused by problems in the muscles themselves or by issues with the nerves that control the muscles.[7] This procedure can also find hidden signs of nerve or muscle problems—even in muscles that seem normal during an exam.[8] To assess whether this procedure is consistent with the practice of chiropractic, we must consider both aspects—the needle and the EMG procedure.

---

[5] The scope also includes "represent[ing] to the public that the person is a chiropractor," TEX. OCC. CODE § 201.002(b)(3), or "us[ing] the term 'chiropractor,' 'chiropractic,' 'doctor of chiropractic,' 'D.C.,' or any derivative of those terms or initials in connection with the person's name," *id.* § 201.002(b)(4).

[6] An "[i]ncisive" procedure "does not include the use of a needle for the purpose of drawing blood for diagnostic testing." *Id.* § 201.002(a)(3).

[7] *See* Kerry R. Mills, *The basics of electromyography*, 76 J. OF NEUROLOGY, NEUROSURGERY & PSYCHIATRY ii32 (Supp. II 2005), https://jnnp.bmj.com/content/76/suppl_2/ii32; *see also* Brief from Kelly M. Walla, JD, LLM, Vice President, Tex. Med. Ass'n, to Hon. Ken Paxton, Tex. Att'y Gen. at 4 (Mar. 23, 2026) (on file with the Op. Comm.) ("TMA Brief") (relying on Mills's article).

[8] Mills, *supra* note 7, at ii32.

We first consider whether the scope of chiropractic permits the use of "nonincisive needles." For background, there is some inconsistency in how Texas courts discuss needles in this context. At times, the analysis centers on the "use of" the needle—treating a procedure as nonincisive based on how the instrument is employed, as in acupuncture. *See, e.g.*, *TMA I*, 375 S.W.3d at 481 (discussing how "in the Legislature's view, acupuncture needles would be capable of *being inserted into the body* in a 'nonincisive' and 'nonsurgical' manner" (emphasis added)); *see also* TEX. OCC. CODE § 205.001(2)(A) (permitting "the nonsurgical, nonincisive *insertion* of an acupuncture needle" (emphasis added)). In other instances, courts have focused on the instrument itself, acknowledging that the technical meaning contemplates both incisive and nonincisive needles. *See, e.g.*, *TMA I*, 375 S.W.3d at 481 (observing that "in the context of health care, needles with beveled edges are said to 'cut' or have a 'cutting edge,' as contrasted with differently edged needles that do not 'cut'"); *Tex. Ass'n of Acupuncture*, 524 S.W.3d at 743 (upholding a Board rule that "reflects the Chiropractic Board's view that *needles may be either incisive or nonincisive*" (emphasis added)). Because courts have acknowledged that both the use of a needle may be nonincisive and the technical definition recognizes needles that are inherently nonincisive, we incorporate both understandings here and use the term "nonincisive needles" to refer to both categories.[9] With that in mind, we address whether needles may be nonincisive.

Significantly, the Third Court of Appeals in *Texas Ass'n of Acupuncture* has already addressed this issue, determining that "the Chiropractic Act does not necessarily preclude the use of all needles in the practice of chiropractic." 524 S.W.3d at 744. This conclusion accords with earlier precedent distinguishing between cutting needles and non-cutting needles. *See TMA I*, 375 S.W.3d at 480−81. With that precedent in mind, the court in *Texas Ass'n of Acupuncture* evaluated the Board's rule governing the use of needles within chiropractic practice and reached a complementary conclusion.

The court upheld the Board's rule permitting the use of needles "in the practice of chiropractic under standards set forth by the Board," where it prohibited "procedures that are incisive or surgical." *Tex. Ass'n of Acupuncture*, 524 S.W.3d at 742−43 (evaluating the predecessor of 22 TEX. ADMIN. CODE § 78.1(b)(2)). Acknowledging that "this rule provision reflect[ed] the Chiropractic Board's view that needles may be either incisive or nonincisive," the court concluded that the Board's construction was reasonable and consistent with the Act's use of the term "incisive." *Id.* at 743.

Notably, the court reached the same conclusion for another Board rule that defined "incision." *Id.* at 742; *see also* 22 TEX. ADMIN. CODE § 78.1(a)(4) (defining "[i]ncision") (formerly 22 TEX. ADMIN. CODE § 78.13(a)(4)). Observing that the Board's "definition of 'incision' . . . recognize[d] that some needles may be considered 'incisive,' while other needles may not," the court determined the rule was both "consistent with the technical meaning of the term 'incisive'" as well as "the Legislature's view that . . . [certain] needles are at least capable of being inserted into the body in a 'nonincisive'" manner. *Tex. Ass'n of Acupuncture*, 524 S.W.3d at 742 (citing *TMA I*, 375 S.W.3d at 481). *See generally* TEX. OCC. CODE § 205.001(2)(A). Accordingly, the use of nonincisive needles is within the ambit of chiropractic practice as statutorily defined.

---

[9] And the courts are not alone in doing this. The request letter and briefing discuss the *type* of needle used as well as *how* the needle is used. *Compare* Request Letter at 4 (focusing on the type of needle used), *with* TMA Brief at 4 (focusing on how the needle is used).

We next consider whether an EMG procedure likewise falls within the practice of chiropractic. Unlike the use of nonincisive needles, we are not aware of any Texas courts that have directly addressed this specific question.[10] "[O]ur primary objective" when construing a statute "is to ascertain and give effect to the Legislature's intent." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We therefore start by examining the statute's words as "'the truest manifestation' of what lawmakers intended is what they enacted, 'the literal text they voted on.'" *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631−32 (Tex. 2008) (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006)).

The Legislature defined the practice of chiropractic to include using "objective or subjective means to diagnose, analyze, [or] examine[] . . . the biochemical condition of the spine and musculoskeletal system of the human body." TEX. OCC. CODE § 201.002(b)(1). These terms are not defined so we apply dictionary definitions to determine the ordinary meaning. *See Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 34 (Tex. 2017) (relying on dictionary definitions to determine the "common, ordinary meaning" where a statutory term is not defined). "[D]iagnose" means "[t]o distinguish or identify (a disease, for example) by diagnosis."[11] THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 514 (3d ed. 1992). "[A]nalyze" is defined as "[t]o separate into parts or basic principles so as to determine the nature of the whole; examine methodically." *Id.* at 66. Along these lines, "examine" includes "test[ing] or check[ing] the condition or health of." *Id.* at 637. And finally, "evaluate" means "[t]o examine and judge carefully." *Id.* at 634. The musculoskeletal system, in turn, is a "system of muscles and tendons and ligaments and bones and joints and associated tissues and nerves that move the body and maintain its form."[12] 22 TEX. ADMIN. CODE § 78.1(a)(5). These terms all contemplate action taken to assess a patient's health status as well as determine the cause of ailments concerning the patient's muscles and associated nerves.

Applying the statute's ordinary meaning, the EMG procedure comfortably fits within the practice of chiropractic under subsection 201.002(b)(1). The procedure records muscle electrical activity to test or investigate the condition of the muscles and associated nerves. *Supra* p. 3. With this information, the chiropractor can determine if there is muscle or nerve pathology as well as the potential cause. *Id.* At its core, therefore, an EMG procedure constitutes a means to diagnose, examine, analyze, and evaluate the biomechanical condition of a patient's musculoskeletal system.[13] It thus falls within the scope of chiropractic as statutorily defined, provided that the

---

[10] Based on our understanding from your description, the Third Court of Appeals addressed a similar rule in 2012, but that rule did not limit the types of needles that could be used to conduct the procedure. *See TMA I*, 375 S.W.3d at 475. Consequently, the court confined its analysis to the type of needle employed within the scope of chiropractic practice and did not reach the question of whether the EMG procedure itself was permitted. *See id.* at 481.

[11] Relatedly, "diagnosis" means "[t]he act or process of identifying or determining the nature and cause of a disease or injury through evaluation of patient history, examination, and review of laboratory data." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 514 (3d ed. 1992).

[12] In 2021, the Texas Supreme Court upheld the Board's definition of "musculoskeletal system." *TMA II*, 616 S.W.3d at 572 (concluding the definition neither contravened the Act's words or its purpose).

[13] Because we conclude that an EMG procedure falls within the practice of chiropractic under subsection 201.002(b)(1), we do not address whether subsection 201.002(b)(2) encompasses the same.

procedure is conducted with a nonincisive needle. In that circumstance, the use of an EMG procedure does not conflict with the statutory limitations placed on chiropractic practice.

Since we have concluded that needles may be nonincisive, *see supra* pp. 3−4, and both nonincisive needles as well as an EMG procedure are within the scope of chiropractic, *see supra* pp. 4−6, the rule as described permitting a licensed chiropractor to perform a nonincisive needle EMG procedure would fall within the Board's rule making authority, *see supra* pp. 2−3.[14]

---

[14] We do not address whether an acupuncture needle, the use of which has been deemed nonincisive by the Legislature, is comparable to an EMG needle, rendering its use nonincisive as well. *See* Request Letter at 3−5. The Legislature charged the Board with "clarifying what activities are included within the scope of the practice of chiropractic and what activities are outside of that scope," TEX. OCC. CODE § 201.1525, requiring the Board to "seek input early in the rule development process" from the "persons who will be most affected" by it, *id.* § 201.1526(b). To quote the Texas Supreme Court, we "are experts in statutory analysis, not in healthcare. To prevent expensive and time-consuming usurpations of [the Board's] policymaking work," our inquiry is limited to whether "the rule [as described] contravenes the Act's specific text or runs counter to its purpose as a matter of law." *TMA II*, 616 S.W.3d at 571. Whether there is a difference of import between an EMG needle and an acupuncture needle or the use thereof is a question of fact outside the scope of this opinion. *See* Tex. Att'y Gen. Op. No. GA-0652 (2008) at 4.

### S U M M A R Y

The Texas Board of Chiropractic Examiners is authorized to adopt a rule clarifying that a needle EMG procedure performed with a nonincisive needle falls within the scope of chiropractic practice, and to specify the training and equipment required for its performance.

Very truly yours,

KEN PAXTON
Attorney General of Texas


BRENT WEBSTER
First Assistant Attorney General

RAPLH MOLINA
Deputy First Assistant Attorney General

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

MICHAEL C. COTTON
Chair, Opinion Committee

AMY L. K. WILLS
Assistant Attorney General, Opinion Committee